UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DONGYAN LIN,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | Case No. 5:26-cv-04883-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEEDINGS

On August 26, 2026, petitioner Dongyan Lin ("Petitioner"), through counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by three supporting exhibits (Docket Nos. 1-2 thru 1-4).

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates the Immigration and Nationality Act ("INA") pursuant to 8 U.S.C. § 1226(a) and 28 U.S.C. § 2241; (2) Petitioner's detention violates her right to procedural due process under the Fifth Amendment; and (3) Petitioner's detention

violates her right to substantive due process under the Fifth Amendment. (Docket No. 1 at 12-14).[1]

On September 2, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4 at 2, 5), Respondents filed an Answer to the Petition ("Answer"). (Docket No. 7). In their Answer, Respondents state that Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026) (finding "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).").

Petitioner did not file a Reply.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a 51-year-old citizen of China who was inspected and admitted to the United States on January 8, 2026, at the Los Angeles International Airport port of entry, as a B-2 nonimmigrant visitor, pursuant to a visa issued by the U.S. Department of State, and was issued Form I-94. (Id. at ¶ 16).

Petitioner was born in 1974 in Wuxi, Jiangsu Province, China. (Id. at ¶ 17). In August 2002, officials enforcing China's coercive population-control policies subjected her to an abortion by force and against her will. (Id.). Congress has determined that a person who has been forced to abort a pregnancy "shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42).

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The Background is based on the allegations in the Petition.

Since arriving in the United States, Petitioner has practiced her Christian faith openly, regularly attending services and activities at her church, deepening her fear of return to China, where unregistered religious practice is suppressed. (Id.).

In early July 2026, within her first year in the United States, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal, with USCIS, based on the forced abortion, as well as on the basis of her Christian faith, which she has practiced openly since arriving in the United States. (Id. at ¶¶ 1, 18). Her application for asylum remains pending and USCIS has never conducted an asylum interview. (Id.).

By Form I-797C notice dated July 23, 2026, USCIS directed Petitioner to appear for collection of her biometrics on August 11, 2026, at 9:00 a.m., at the USCIS El Monte Application Support Center, 17843 Colima Road, City of Industry, California 91748. (Id. at ¶ 19). The notice warned that unexcused failure to appear could result in dismissal of her asylum application, referral to an Immigration Judge, or a finding that the application had been abandoned. (Id.).

On the morning of August 11, 2026, Petitioner appeared for her biometrics appointment as USCIS directed. (Id. at ¶ 21). While she was at the Application Support Center complying with the government's own written instructions, Immigration and Customs Enforcement ("ICE") officers arrested her. (Id.). On information and belief, the officers acted without a judicial warrant and without any individualized determination that Petitioner—whose identity, residence, and pending affirmative application were all known to the government, and who was present precisely because she obeyed a government notice—was likely to escape before a warrant could be obtained. (Id.).

/ / /

/ / /

/ / /

Petitioner was not arrested at or near a border or port of entry in connection with an attempt to enter the United States. (Id. at ¶ 22). She was arrested in the interior of the United States, seven months after her lawful admission, at a federal benefits appointment. (Id.).

Department of Homeland Security ("DHS") filed a Notice to Appear with the Adelanto Immigration Court, with a docket date of August 13, 2026, charging her, on information and belief, with removability under 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who remained longer than permitted. (Id. at ¶ 23). A master calendar hearing was held via internet-based hearing on August 25, 2026, before Immigration Judge Steven Marcus. (Id.).

ICE has not served Petitioner with a Form I-286 Notice of Custody Determination offering release on bond or recognizance. (Id. at ¶ 24).

At no time since August 11, 2026, has any neutral adjudicator considered whether Petitioner presents a danger to the community or a risk of flight, whether any such risk could be mitigated by conditions of release, or whether her continued detention serves any legitimate governmental purpose. (Id. at ¶ 25).

Petitioner has never been arrested, charged with, or convicted of any offense anywhere in the world. (Id. at ¶ 20). She has never been ordered removed, has never missed an immigration appointment or hearing, and had never before been in immigration custody. (Id.).

Petitioner's detention is harming her health. (Id. at ¶ 26). She suffers from hypertension, a chronic condition requiring consistent medication, monitoring, and management of stress. (Id.). Since her detention, her physical and mental health have deteriorated significantly. (Id.).

Petitioner is being detained at the Adelanto Ice Processing Center in Adelanto, California. (Id. at ¶¶ 2, 6, 8, 9; see https://locator.ice.gov/odls/#/results).

/ / /

## III.
## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due

process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

/ / /

/ / /

/ / /

## IV.

## DISCUSSION

### A. Petitioner is Entitled to Habeas Relief.

Petitioner claims that her arrest and detention on August 11, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process. (See Petition at 12-14). Specifically, Petitioner alleges that she lawfully arrived in the United States on January 8, 2026 on a B-2 nonimmigrant visitor visa, and that she filed an Application for Asylum and for Withholding of Removal with USCIS in July 2026, based on her fear of persecution if she returns to China due to the forced abortion she was subjected to, as well as her Christian faith. (Id. at 6). During the pendency of her asylum application, Petitioner has complied in a diligent fashion with all of the government's requirements and the government has chosen not to detain her, but instead has permitted her to remain free and at liberty while exercising authority over her application for immigration relief. (See, e.g., Petition at ¶¶ 42, 47).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. J. G. G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884- TLN-SCR, 2025 WL 1927596, at *2 (E.D.

Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for asylum. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal. Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal. July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

As demonstrated in the cases cited above, courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, such as applying for asylum, and the government chose not to detain them. See also Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

The Court finds the reasoning of these cases persuasive. Petitioner entered the United States lawfully pursuant to a B-2 nonimmigrant visitor visa, in January 2026, and thereafter proceeded through the established lawful process to apply to the government for asylum. (Petition at ¶¶ 16, 18, 19). Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of her asylum application, or since July 2026. With this knowledge, the government has elected not to detain Petitioner while exercising authority over her legal proceedings, all the while permitting her to remain free and at liberty while her application was pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process she is owed before the government may take that liberty interest away. Petitioner claims that due process was required before she was taken into custody. Petitioner argues that the appropriate habeas remedy is for her to be released back to the community. (Petition at 15). The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

/ / /

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before she was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community and pursuing her application for immigration relief. See Ortega, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide her with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). And where a petitioner has not received a hearing or other process prior to the revocation of his liberty, "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required her immediate arrest and detention when she arrived at her biometrics appointment on August 11, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey v. Brewer, 408 U.S. 471, 483 (1972) (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

As for the appropriate remedy for the government's due process violation, many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. See e.g., Charan S. v. Warden, CA City, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months");; Saballos Rosales v. Noem, Case No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting Temporary Restraining Order and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan); Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was

owed"); ; Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position she would have enjoyed absent the due process violation—that is, she should be released from detention. See, e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbir v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

Accordingly, Petitioner's claim that her right to due process was violated by the lack of notice and hearing prior to her arrest and detention is granted. The remaining claims in the Petition are denied as moot in light of the relief granted on this claim.

## V.

## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Dongyan Li (A# 242-516-580) from custody, subject to the same conditions (if any) that she was subject to at the time she was arrested and re-detained, (b) ordering Respondents to return all property confiscated from

Petitioner during her arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: September 15, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE